UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Lashawn Marshall | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

Marisa Huber                 Andrew Kehagiaras
                                                Andy Kleiner

**Proceedings:**     ZOOM HEARING RE: DEFENDANT/THIRD-PARTY PLAINTIFF AM TRANS EXPEDITE, LLC'S MOTION FOR SUMMARY JUDGMENT (Dkt. 57, filed on November 3, 2025)

## I. INTRODUCTION

On October 9, 2024, plaintiff Allianz Global Risks US Insurance Company ("Plaintiff" or "Allianz") filed this action against defendants Benchmark Trade Solutions, Inc. ("Benchmark"), AM Trans Expedite, LLC ("Third-Party Plaintiff" or "AM Trans"), and Does 1 through 10 (collectively, "Defendants"). Plaintiff's complaint alleges two causes of action: (1) liability under the Carmack Amendment, 49 U.S.C. § 14706, against AM Trans and Does 1 through 10; (2) breach of contract against Benchmark and Does 1 through 10. Dkt. 1 ("Compl.").

On December 13, 2024, Benchmark filed a cross-complaint against AM Trans, alleging claims for (1) equitable indemnification and (2) contribution. Dkt. 15 ("Cross-compl.").

On May 13, 2025, AM Trans filed a motion for leave to file a third-party complaint against Speedy, Safe and Sure Logistics LLC ("Speedy"). Dkt. 31. On June 9, 2025, the Court granted AM Trans' motion. Dkt. 37. On June 10, 2025, AM Trans filed its third-party complaint against Speedy, alleging claims for (1) equitable indemnification and (2) contribution. Dkt. 38 ("Third-party compl.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

On November 3, 2025, AM Trans filed the instant motion for summary judgment on plaintiff's Carmack Amendment claim against AM Trans and cross-claimant Benchmark's claims against AM Trans. Dkt. 57-1 ("Mot."). AM Trans concurrently filed a statement of uncontroverted facts, dkt. 57-3, as well as a declaration from Andrew B. Kleiner, dkt. 57-2, and exhibits, dkts. 57-4 to 57-19.

On November 24, 2025, plaintiff Allianz filed an opposition to AM Trans' motion for summary judgment. Dkt. 60 ("Opp. by Allianz"). Plaintiff concurrently filed a statement of genuine disputes of material fact, dkt. 60-8, as well as a declaration from Marisa G. Huber, dkt 60-1, and exhibits, dkts. 60-2 to 60-7.

On November 24, 2025, Benchmark filed an opposition to AM Trans' motion for summary judgment. Dkt. 61 ("Opp. by Benchmark"). Benchmark concurrently filed a statement of genuine disputes of material fact and additional material facts, dkt. 61-13, as well as declarations from Andrew D. Kehagiaras, dkt. 61-1, Paul Roberge, dkt. 61-4, and exhibits, dkts. 61-2 to 61-3; dkts. 61-5 to 61-8.

On December 1, 2025, AM Trans filed a reply to Allianz's opposition, dkt. 63 ("Reply to Allianz"), as well as a response to Allianz's statement of genuine disputes of material facts, dkt. 64 ("Resp. to Allianz"). AM Trans' response to Allianz covers the 37 facts asserted by AM Trans. Dkt. 64.

The same day, AM Trans filed a reply to Benchmark's opposition, dkt. 65 ("Reply to Benchmark"), as well as a response to Benchmark's statement of genuine disputes of material facts, dkt. 65-1 ("Resp. to Benchmark"). AM Trans' response to Benchmark covers the 37 facts asserted by AM Trans and the 12 additional facts asserted by Benchmark. Dkt. 65-1 ¶¶ 1-37; ¶¶ 38-49.

On December 15, 2025, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

## II. BACKGROUND

### A. The Loss of Plaintiff's Insured's Shipments

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.[1]

In October 2022, Lorex Technology, Inc. ("Lorex"), Allianz's insured, contracted with Benchmark, acting as a freight broker, for four shipments of security equipment (the "Goods") from Carson, California to Indianapolis, Indiana. Resp. to Allianz ¶ 1; Resp. to Benchmark ¶ 1.

The parties dispute whether Benchmark hired AM Trans Expedite, LLC ("AM Trans") to merely arrange for the transportation of (i.e., broker) the Goods—AM Trans' position—or whether Benchmark hired AM Trans to be the carrier of the Goods—Allianz's and Benchmark's positions. Resp. to Allianz ¶ 2; Resp. to Benchmark ¶ 2.

Benchmark states that it believed it contracted with AM Trans, not knowing of its conversion to AM Trans Expedite Inc. See Resp. to Benchmark ¶ 5.

The parties dispute whether a broker-carrier agreement exists between Benchmark and AM Trans; AM Trans contends that no agreement exists; Allianz and Benchmark contend that an agreement exists. Resp. to Allianz ¶ 3; Resp. to Benchmark ¶ 3.

AM Trans never took actual possession of the Goods. Resp. to Allianz ¶ 4; Resp. to Benchmark ¶ 4.

AM Trans subcontracted the shipment of the Goods to Speedy, Safe and Sure Logistics LLC ("Speedy"), who used its own assets for transportation of the Goods. See Resp. to Allianz ¶ 5; Resp. to Benchmark ¶ 5. Allianz disputes that AM Trans acted only as a broker (as opposed to a carrier) when subcontracting the shipment of the Goods to Speedy. Resp. to Allianz ¶ 5.

---

[1] To the extent the Court relies on evidence to which there has been an objection, the Court has overruled the objection to that evidence. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (explaining that, at the summary judgment stage, courts may consider any evidence that could be presented in an admissible form at trial).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

Speedy collected the shipments from California on October 3, 4, and 6, 2022, for delivery to Indianapolis on October 10 and 12, 2022. Resp. to Allianz ¶ 17; Resp. to Benchmark ¶ 17.

As of October 12, 2022, none of the shipments had been delivered. Resp. to Allianz ¶ 18; Resp. to Benchmark ¶ 18.

Instead of completing delivery, Speedy transported the shipments to one of its warehouse facilities in Ohio, then ceased operations due to financial instability. Resp. to Allianz ¶ 19; Resp. to Benchmark ¶ 19.

Upon learning of the non-delivery, AM Trans contacted a Speedy driver, who confirmed the cargo remained at the Ohio warehouse. Resp. to Allianz ¶ 20; Resp. to Benchmark ¶ 20.

Mike Wallace, an AM Trans employee, visited the facility and located 100 out of 120 pallets, arranging for their recovery and delivery to the consignee. Resp. to Allianz ¶ 21; Resp. to Benchmark ¶ 21.

AM Trans lacked any knowledge of Speedy's financial instability or the existence of the Ohio warehouse prior to this incident. Resp. to Allianz ¶ 22; Resp. to Benchmark ¶ 22.

**B.    The Parties' Relationships**

Since February 2019, an AM Trans entity and Benchmark have worked together on this California-to-Indiana shipping lane at least 29 times without issue. See Resp. to Allianz ¶ 6; Resp. to Benchmark ¶ 6. Since February 2019, Benchmark has contracted with an AM Trans entity with respect to least 437 separate shipments. Resp. to Allianz ¶ 24; see Resp. to Benchmark ¶ 24.

Since August 2019, AM Trans contends that Benchmark has brokered shipments through AM Trans, and that AM Trans has re-brokered all of them to third-party motor carriers; by contrast, Benchmark contends that it never considered any of its transactions with any AM Trans entity to be brokered—Benchmark contends that in each instance, Benchmark's expectation was that an AM Trans entity would transport the freight in question and would not "double-broker" the freight or assign such transportation to another motor carrier. See Resp. to Benchmark ¶ 26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

 DB Schenker served as the freight forwarder for the vast majority of these shipments, tendering the cargo directly to the third-party motor carrier who physically arrived at the dock. See Resp. to Benchmark ¶ 27. In particular, AM Trans relied on Speedy for the actual transportation. Resp. to Allianz ¶ 7; Resp. to Benchmark ¶ 7. DB Schenker released cargo to whichever third-party motor carrier physically arrived for pick-up, regardless of the name listed on the paperwork. Resp. to Allianz ¶ 10; Resp. to Benchmark ¶ 10. AM Trans contends that DB Schenker released hundreds of shipments to a third-party motor carrier, like Speedy, whose name did not appear on the bills of lading, or carrier confirmations as the motor carrier, or at all. Resp. to Allianz ¶ 11; see Resp. to Benchmark ¶ 11.

 AM Trans had relied on Speedy for many prior shipments without issue and had no reason to suspect problems with these loads. Resp. to Allianz ¶ 23; Resp. to Benchmark ¶ 23.

 AM Trans contends that this practice occurred hundreds of times, and neither Benchmark nor DB Schenker ever objected or enforced any "no double-brokering" clause; by contrast, Benchmark contends that it did not know that AM Trans was assigning other motor carriers to perform such transportation. Resp. to Benchmark ¶ 12. AM Trans and Benchmark dispute whether both Benchmark and DB Schenker knew that AM Trans was not acting as the motor carrier for these shipments and failed to raise any objection. See Resp. to Benchmark ¶ 28.

 AM Trans and Benchmark appear to dispute whether, with respect to the Goods here, DB Schenker served as the freight forwarder or served as Lorex's third-party warehouse. See Resp. to Benchmark ¶ 8.

 Each bill of lading for the Goods originated from DB Schenker and listed the carrier as "Benchmark c/o AMTrans." Resp. to Allianz ¶ 9; Resp. to Benchmark ¶ 9.

 The applicable carrier confirmations reference "AM Trans Expedite INC" as the carrier for the Goods. Resp. to Allianz ¶ 15. Benchmark contends that AM Trans and AM Trans Expedite INC are not distinct entities because they constitute the same business. Resp. to Benchmark ¶ 15.

 When Benchmark first started working with "AM Trans Expedite" in 2019, that company stated to Benchmark in writing that "AM Trans Expedite" was an "asset based

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

carrier" that was "hoping to become an approved carrier for your company." <u>See</u> Resp. to Benchmark ¶ 38.

According to the copy of a Federal Motor Carrier Safety Administration ("FMCSA") permit that "AM Trans Expedite" provided to Benchmark in April 2019, the full name of "AM Trans Expedite" was "AM Trans Expedite Inc" and that entity was an FMCSA-licensed motor carrier. <u>Id.</u> ¶ 39.

From 2019 through January 5, 2023, which is when Benchmark stopped doing business with "AM Trans Expedite," Benchmark made all payments by ACH transfer to the same bank account. <u>Id.</u> ¶ 40.

AM Trans and Benchmark dispute whether, until the loss of the Cargo, Benchmark knew of the existence of "AM Trans Expedite, LLC". <u>See id.</u> ¶ 41.

On May 6, 2019, AM Trans Expedite Inc converted to limited liability company AM Trans Expedite, LLC. Resp. to Benchmark ¶ 42.

AM Trans and Benchmark dispute whether, until the filing of the present action, Benchmark knew that in May 2019, AM Trans Expedite Inc converted into a limited liability company and became AM Trans Expedite, LLC. Resp. to Benchmark ¶ 43.

AM Trans and Benchmark dispute whether Benchmark sent the four "Carrier Confirmation" forms to AM Trans Expedite Inc because Benchmark did not know of the conversion to AM LLC. Resp. to Benchmark ¶ 44.

AM Trans and Benchmark dispute whether Benchmark uses Carrier Confirmations in its dealings with motor carriers to state the essential terms under which Benchmark will do business with a given motor carrier to transport a given cargo for a given customer. Resp. to Benchmark ¶ 45.

AM Trans and Benchmark dispute whether, in or about August 2022, Benchmark received from AM Trans a copy of its ACORD certificate of insurance that states that Am Trans had motor truck cargo legal liability coverage with Travelers Property Casualty Company of America, among other coverages with other insurers. Resp. to Benchmark ¶ 48.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

AM Trans Expedite Inc., in 2019, and Am Trans, in 2022, provided proof of motor truck cargo legal liability insurance coverage to Benchmark. Resp. to Benchmark ¶ 49.

The last time an AM Trans entity actually served as a motor carrier for Benchmark was in August 2019. See Resp. to Benchmark ¶ 25.

AM Trans and Allianz dispute whether AM Trans has held motor carrier authority since April 15, 2021, when it requested the Federal Motor Carrier Safety Administration ("FMCSA") to revoke its authority. Resp. to Allianz ¶ 13. Accordingly, AM Trans and Allianz dispute whether, at the time of the shipments of the Goods in October 2022, AM Trans only possessed broker authority. Resp. to Allianz ¶ 14.

The parties dispute whether Allianz has produced any written agreement, bill of lading, or carrier confirmation signed by AM Trans, nor any communication or document showing that AM Trans held itself out as the carrier or accepted the shipments for transport. Allianz and Benchmark contend—and AM Trans disputes—that Benchmark hired AM Trans as the carrier of the Goods and that AM Trans held itself out as the carrier of the Goods. Resp. to Allianz ¶ 16; Resp. to Benchmark ¶ 16.

AM Trans and Allianz dispute whether, during requests for production, Allianz produced only DB Schenker bills of lading and unsigned carrier confirmations referencing "AMTrans" or "AM Trans Expedite Inc.," not "AM Trans Expedite, LLC" (i.e., AM Trans). Resp. to Allianz ¶ 31.

AM Trans and Allianz dispute whether Allianz produced any written agreement, bill of lading, or carrier confirmation signed by "AM Trans Expedite, LLC," or any communication or document showing that prior to this or any other shipment that AM Trans held itself out as the carrier or accepted the shipments for transport as the carrier. See id. ¶ 32; 34-35.

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL   'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

AM Trans first argues that Allianz cannot establish a prima facie Carmack Amendment claim because "Allianz has failed to produce any admissible evidence that AM Trans received, transported, delivered, or issued a bill of lading for the shipments, or performed any carrier functions." Mot. at 2. Second, AM Trans argues that Benchmark's crossclaims for equitable indemnification and contribution fail as a matter of law because Allianz has not asserted any tort claims against AM Trans or Benchmark, which is a prerequisite for viable claims for equitable indemnification or contribution under controlling California law. Id. The Court discusses each issue in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

### A.    Plaintiff Allianz's Carmack Amendment Claim against AM Trans

AM Trans states that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, et seq., makes common carriers liable "for any loss or damage" caused by such carriers to property received by them for transportation. Id. at 9. AM Trans argues that Allianz fails to establish a prima facie Carmack Amendment claim against it because "[t]he undisputed record demonstrates that AM Trans never served as the motor carrier for the shipments. Allianz produced no evidence that AM Trans ever received, transported, or delivered the goods, issued a bill of lading, held itself out as a carrier, or performed any carrier functions. (SUF ¶¶ 4, 5, 9, 16, 35-37.) The record shows, and Allianz does not dispute, that Speedy served as the sole motor carrier. (SUF ¶¶ 5, 17, 19, 35.)." Id. at 9-10.

AM Trans argues that "[t]he record further shows that AM Trans never took possession of the Goods, never issued a bill of lading, and never accepted the shipments as a carrier. (SUF ¶¶ 4, 16, 35.) Benchmark engaged AM Trans solely to broker the shipments, and AM Trans re-brokered them to Speedy, who used its own assets for transportation. (SUF ¶¶ 5, 17, 19, 35.) Plaintiff's discovery responses confirm the absence of any evidence that AM Trans acted as the motor carrier, took possession of the shipments, or was listed as the carrier on any operative shipping document. (SUF ¶¶ 16, 29-37.) Plaintiff has not produced, and cannot produce, any written agreement, bill of lading, or carrier confirmation signed by AM Trans, nor any communication or document showing that AM Trans held itself out as the carrier or accepted the shipments for transport. (SUF ¶¶ 16, 32, 36.)." Id. at 10.

Furthermore, AM Trans argues that "[t]he carrier confirmations reference 'AM Trans Expedite INC' as the carrier, a separate and distinct entity from AM Trans. (SUF ¶ 15.) Because only 'AM Trans Expedite Inc.' appears on the carrier confirmations, the LLC [i.e., the party to this case, AM Trans] is not a party to or bound by any alleged 'no double brokering" clause.' … The record shows only Speedy acted as the carrier, not AM Trans. (SUF ¶¶ 5, 17, 19, 35.)." Id. Thus, AM Trans argues that because it was not a carrier, it cannot be held liable under the Carmack Amendment. Id. at 12.

In opposition, plaintiff Allianz argues that AM Trans violated Local Rule 7-3 by failing to meet and confer with plaintiff prior to filing its motion. Opp. by plaintiff at 5-6. Second, plaintiff argues that there is a disputed issue of material fact as to whether AM

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

Trans (i.e., AM Trans Expedite, LLC) was the proper party sued in this case because "AM Trans provided a certificate of liability insurance for 'AM Trans Expedite LLC' to Benchmark (Lorex's broker) when AM Trans agreed to carry the cargo. Huber Decl. ¶ 3-4, Exs. B-C." Id. at 6. Moreover, "[c]orrespondences and shipping documents refer to "AM Trans" without specificity as to the entity form." Id. Third, plaintiff argues that there is a genuine dispute as to whether AM Trans acted as a "motor carrier" within the statutory definitions of the Carmack Amendment. Id. at 7. Plaintiff argues that "liability under the Carmack Amendment attaches where the motor carrier "accepted responsibility for ensuring delivery of the goods, regardless of who actually transported them …" Id. at 8 (citing CGU Int'l Ins., PLC v. Keystone Lines Corp., 2004 WL 1047982 *2 (N.D. Cal. 2004)). Thus, plaintiff argues that "motor carrier liability can attach against the party who arranges to have another trucker to carry the load." Id. (citing Custom Cartage, Inc. v. Motorola, Inc., 1999 WL 965686 *8 (N.D. Ill. 1999)). Furthermore, plaintiff argues that "[w]hether AM Trans is a 'broker' or a 'carrier' is not determined by what it labels itself, but by how it represents itself to the world and its relationship to the shipper the shipper's broker." Id. (citing cases). Here, plaintiff argues that there is a genuine dispute as to whether AM Trans acted as a "motor carrier" because "documents both before and after the loss reflect that AM Trans would be the delivering carrier" and "[n]one of the communications or documents AM Trans issued to Benchmark (Lorex's actual broker), indicated the loads would be carried by an outside trucker." Id. at 9.

In reply, AM Trans concedes that AM Trans's counsel did not meet and confer with counsel for Allianz and counsel for Benchmark prior to filing the Motion but argues that the parties would not have resolved the issues AM Trans raises in the Motion as the result of a meet and confer taking place prior to filing the Motion.[2] Reply at 3. Second, AM Trans argues that Allianz sued the wrong party and instead should have sued AM Trans Expedite, Inc. because "Allianz has [not] produced any evidence that AM Trans Expedite, LLC, specifically, is named as the carrier on the bills of lading or carrier confirmations for the shipments, such that this entity bound itself to accept Carmack liability as a motor carrier for the shipments. … To the contrary, each of the operative bills of lading listed the carrier as 'Benchmark c/o AMTrans.'" Id. at 5. Thus, AM Trans

---

[2] While the Court acknowledges that AM Trans violated Local Rule 7-3, it appears that a meeting would not have narrowed or resolved the present motion. Nonetheless, the parties are admonished to comply with the Local Rules in the future.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

argues that it is not a proper party to this action. Id. at 6. Third, AM Trans argues that plaintiff fails to establish a prima facie Carmack Amendment claim against AM Trans because "the record is undisputed that the cargo was never tendered to AM Trans as the delivering motor carrier" and "[a]s such, Allianz cannot satisfy the 'delivery' prong of the three-part *prima facie* case under [the] Carmack [Amendment]." Id. at 7. AM Trans further argues that "the record makes clear that AM Trans 'represented itself to the world' on the publicly available FMCSA website as early as April 15, 2021 as having no carrier authority, only broker authority, given that its carrier authority had been revoked as of that date. (Doc. 57-3, SUF ¶ 13.)." Id. at 7-8. Thus, AM Trans argues that it cannot be liable under the Carmack Amendment, which imposes liability on carriers, not brokers. Id.

To establish a prima facie case against a motor carrier under the Carmack Amendment, the plaintiff must allege: (1) delivery of the goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, or failure to deliver altogether, and (3) the amount of damages. Beta Spawn, Inc. v. FFE Transportation Services, Inc., 250 F.3d 218, 223 (3d Cir. 2001); accord Roberts v. N. Am. Van Lines, Inc., 394 F. Supp. 2d 1174, 1182 (N.D. Cal. 2004). Heritage Int'l, Inc. v. SMBAT KG Express, Inc., No. 216CV08991CASPJWX, 2018 WL 2315946, at *3 (C.D. Cal. May 18, 2018). "However, liability under the Carmack Amendment is limited to carriers and does not extend to brokers. 49 U.S.C. Section 14706." Proline Distribution Servs., Inc. v. United Freight Grp., LLC, No. 2:24-CV-09763-CV (ASX), 2025 WL 3050145, at *4 (C.D. Cal. Sept. 29, 2025).

"[T]he key distinction [in differentiating brokers from carriers] is whether the disputed party accepted legal responsibility to transport the shipment." Essex Ins. Co. v. Barrett Moving & Storage, Inc., 885 F.3d 1292, 1301 (11th Cir. 2018); see also CGU Int'l Ins., PLC v. Keystone Lines Corp., No. C-02-3751 SC, 2004 WL 1047982, at *2 (N.D. Cal. May 5, 2004) ("The crucial distinction is whether the party legally binds itself to transport, in which case it is considered a carrier. That is, if [the defendant] accepted responsibility for ensuring delivery of the goods, regardless of who actually transported them, then [the defendant] qualifies as a carrier. If however [the defendant] merely agreed to locate and hire a third party to transport the [goods], then it was acting as a broker.") (cleaned up). "The fact that an entity has a broker's license but not a motor carrier's license is not dispositive of the issue of liability. ... 'A carrier's status as a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL  'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

common carrier is determined not by reference to its authority but rather by reference to what it holds itself out to be.' … Thus, if [a party] held itself out as a motor carrier, it may still be held liable under the Carmack Amendment even though it did not physically transport the [Goods] itself." Collicutt Energy Servs. Inc. v. Trinity Logistics, Inc., No. 222CV00364TLNCKD, 2024 WL 920556, at *4 (E.D. Cal. Mar. 1, 2024) (citations omitted).

The Court finds that there is a genuine dispute as to whether AM Trans qualifies as a motor carrier for the Goods at issue and accepted legal responsibility to transport the Goods. Plaintiff has provided competent evidence that AM Trans accepted legal responsibility for the Goods by holding itself out as a motor carrier: communications between Benchmark and AM Trans indicate that AM Trans agreed to serve as a carrier for or otherwise directly transport the Goods. See Dkt. 60-1, Huber Decl. ¶ 3, Ex. B; Id. ¶ 5, Ex. D (email from Corey Mullins, with email cory@amtransexpedite.com, to a Benchmark employee stating that "We're still working through a local driver shortage…Typically, our OTR drivers bring it to our partner[']s warehouse where our local drivers then grab the trailer and make final deliveries"); id. ¶ 6, Ex. E (email from Corey Mullins to President of Benchmark David Roberge stating that "my team outsourced [the Goods] because we were in a bind and shouldn't have. We tried to service the loads rather than kick them back at the last second without coverage."). Moreover, AM Trans provided a certificate of liability insurance for "AM Trans Expedite LLC"—i.e., AM Trans—to Benchmark that stated that AM Trans possessed "MOTOR TRUCK CARGO" insurance coverage with Travelers Property Casualty Company of America. Id. ¶ 3-4, Ex. C.

Viewing the facts in the light most favorable to the plaintiff, the Court finds that a rational jury could conclude that AM Trans held itself out as a motor carrier and is strictly liable as a motor carrier under the Carmack Amendment. See Collicutt Energy Servs. Inc., 2024 WL 920556, at *4. Accordingly, AM Trans is not entitled to summary judgment on plaintiff's claim against under the Carmack Amendment.

### B. Benchmark's Equitable Indemnification Claim against AM Trans

AM Trans argues that Benchmark's equitable indemnification claim against AM Trans fails because "[t]he predicate for an equitable indemnification claim is that the proposed indemnitor and indemnitee are joint tortfeasors" and "Allianz did not assert a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

tort claim against AM Trans (only a Carmack claim) or Benchmark (only a breach of contract claim)." Id. at 13-14. AM Trans argues that "without tort liability, AM Trans cannot possibly be a joint tortfeasor subject to equitable indemnification," and "because there is no written broker carrier or co-broker agreement governing the relationship between Benchmark and AM Trans, there is no joint legal obligation either." Id. at 14.

In opposition, Benchmark argues that AM Trans failed to comply with Local Rule 7-3 prior to filing its motion. Opp. by Benchmark at 1. Substantively, Benchmark first argues that there are genuine disputes of material fact as to whether AM Trans is a motor carrier for purposes of Carmack Amendment liability because AM Trans held itself out to Benchmark as a motor carrier; for example, Benchmark argues that "when Benchmark first started working with 'AM Trans Expedite,' that company stated to Benchmark in writing in April 2019 that 'AM Trans Expedite' was an 'asset based carrier.'" Id. at 3. Benchmark further argues that "it is undisputed that Am Trans Expedite Inc, in 2019, and [AM Trans], in 2022, provided proof of [motor truck cargo legal liability] insurance coverage to Benchmark." Id. at 11. Regarding its equitable indemnification claim against AM Trans, Benchmark argues that it has presented evidence to support its claim under a theory of contractual indemnity and traditional equitable indemnity. See id. at 11-13. First, Benchmark argues that AM Trans is liable to Benchmark under a theory of equitable indemnity because AM Trans and Benchmark are alleged to be joint tortfeasors for plaintiff's injury: namely, plaintiff alleges that AM Trans is strictly liable to plaintiff's injury under the Carmack Amendment and that Benchmark is alleged to be liable to plaintiff's same injury under a claim for breach of contract. See id. at 12-13. Second, Benchmark argues that AM Trans is liable to Benchmark under a theory of implied contractual indemnity arising from numerous carrier confirmations between Benchmark and AM Trans entity which stipulated that "Benchmark was relying on AM Trans Expedite Inc's undertaking as the named carrier on those documents" and prevented Benchmark from double brokering shipments. Id. at 16.

In reply, AM Trans argues that "Benchmark failed to rebut, controlling authority holding that equitable indemnity and contribution are available only where the underlying plaintiff asserts a tort claim against the party seeking indemnity." Reply to Benchmark at 3. AM Trans argues that "California law does not permit apportionment or indemnity for breach of contract damages absent a tort claim. … Benchmark ignores this rule and fails to cite any contrary authority, and thus cannot recast its contract-based exposure as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

indemnity or contribution." Id. at 4 (citing cases). Furthermore, AM Trans argues that Benchmark's contractual indemnity theory is prejudicial and untimely because Benchmark's cross-claim against AM Trans does not allege implied contractual indemnity and asserts claims only for equitable indemnity and contribution. Id. at 5-6.

"The common law equitable indemnity doctrine relates to the allocation of loss among multiple tortfeasors. The duty to indemnify may arise and indemnity may be allowed when in equity and good conscience the burden of a judgment should be lifted from a person seeking indemnity to one from whom indemnity is sought." Fireman's Fund Ins. Co. v. Haslam, 29 Cal. App. 4th 1347, 1353 (1994). "The doctrine applies only among defendants who are jointly and severally liable to the plaintiff." BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc., 119 Cal. App. 4th 848, 852 (2004). Still, "joint and several liability in the context of equitable indemnity is fairly expansive …. It can apply to acts that are concurrent or successive, joint or several, as long as they create a detriment caused by several actors." Id. While implied contractual liability can provide a basis for joint and several liability, joint and several liability generally stems from a duty that the indemnitor owes the plaintiff. See 5 Witkin, Summary of Cal. Law (11th) Torts § 225 (2018). Equitable indemnity need not be premised on identical claims alleged against joint and several tortfeasors; rather, "[t]he claims must relate to the same legal injury, but do not have to be identical claims." Employers Ins. of Wausau v. Musick, Peeler, & Garrett, 948 F. Supp. 942, 944 (S.D. Cal. 1995) (citing Molko v. Holy Spirit Assn., 46 Cal.3d 1092, 1127–28 (1988)). See also In re JTS Corp., 617 F.3d 1102, 1117 (9th Cir. 2010) (under California law, "[w]hether individuals are joint tortfeasors … depends upon whether they caused 'one indivisible injury' or 'the same wrong' … "the plaintiff need not allege the same tort against the tortfeasors, but must only claim that the tortfeasors caused the same harm") (citation omitted); AmeriGas Propane, L.P. v. Landstar Ranger, Inc., 184 Cal. App. 4th 981, 989, 109 Cal. Rptr. 3d 686, 692 (2010) ("The test for indemnity is thus whether the indemnitor and indemnitee jointly caused the plaintiff's injury."). "[M]ultiple courts have recognized indemnity claims not based on tort." Rubie's LLC v. First Am. Title Co., No. 118CV01052DADSKO, 2018 WL 6419674, at *4 (E.D. Cal. Dec. 6, 2018) (collecting cases).

As a preliminary matter, should subsequent evidence establish that AM Trans is a carrier, the Carmack Amendment completely preempts Benchmark's crossclaims for equitable indemnity. See White v. Mayflower Transit, L.L.C., 543 F.3d 581, 584 (9th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

Cir. 2008) ("The Carmack Amendment is a federal statute that provides the exclusive cause of action for interstate shipping contract claims, and it completely preempts state law claims alleging delay, loss, failure to deliver and damage to property."). Thus, in Real Int'l SCM v. J.B. Hunt Transp., Inc., the court held that the Carmack Amendment preempted claims for express indemnity and equitable indemnity by the third-party plaintiff, a broker for the plaintiffs, against the third-party defendant, an alleged carrier that contracted with the third-party plaintiff to transport plaintiffs' cargo but failed to do so. No. CV 23-4160-KK-RAOX, 2025 WL 3050222, at *5 (C.D. Cal. July 24, 2025). Although the court's holding arose in the context of the third-party plaintiff's motion for default judgment against the third-party defendant, id. at *1, the court's reasoning regarding the preemptive scope of the Carmack Amendment is applicable in this case, which similarly involves state law claims (equitable indemnity and contribution) by Benchmark, a broker for plaintiff Allianz, against co-defendant AM Trans, an alleged carrier that contracted with Benchmark to transport the Goods of Allianz's insured but failed to do so.

By contrast, the issue of "[w]hether the Carmack Amendment preempts state law claims against brokers is not [] settled," Prussin v. Bekins Van Lines, LLC, No. 5:13-CV-02874 HRL, 2015 WL 457470, at *3 (N.D. Cal. Feb. 3, 2015) (collecting cases). At this stage, the Court presumes that the Carmack Amendment does not preempt state law claims against brokers. See id.; see also Watson v. Bekins Van Lines Co., No. CV0903436DDPJCX, 2009 WL 10671724, at *3 (C.D. Cal. Oct. 6, 2009). Thus, because there is a genuine dispute as to whether AM Trans is a carrier or a broker, as discussed above, the Court considers Benchmark's equitable indemnity claim on the merits and not preempted by the Carmack Amendment.

"The common law equitable indemnity doctrine relates to the allocation of loss among multiple tortfeasors. The duty to indemnify may arise and indemnity may be allowed when in equity and good conscience the burden of a judgment should be lifted from a person seeking indemnity to one from whom indemnity is sought." Fireman's Fund Ins. Co. v. Haslam, 29 Cal. App. 4th 1347, 1353 (1994). "The doctrine applies only among defendants who are jointly and severally liable to the plaintiff." BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc., 119 Cal. App. 4th 848, 852 (2004). Still, "joint and several liability in the context of equitable indemnity is fairly expansive …. It can apply to acts that are concurrent or successive, joint or several, as long as they create

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

a detriment caused by several actors." Id. While implied contractual liability can provide a basis for joint and several liability, joint and several liability generally stems from a duty that the indemnitor owes the plaintiff. See 5 Witkin, Summary of Cal. Law (11th) Torts § 225 (2018). Equitable indemnity need not be premised on identical claims alleged against joint and several tortfeasors; rather, "[t]he claims must relate to the same legal injury, but do not have to be identical claims." Employers Ins. of Wausau v. Musick, Peeler, & Garrett, 948 F. Supp. 942, 944 (S.D. Cal. 1995) (citing Molko v. Holy Spirit Assn., 46 Cal.3d 1092, 1127–28 (1988)). See also In re JTS Corp., 617 F.3d 1102, 1117 (9th Cir. 2010) (under California law, "[w]hether individuals are joint tortfeasors … depends upon whether they caused 'one indivisible injury' or 'the same wrong' … "the plaintiff need not allege the same tort against the tortfeasors, but must only claim that the tortfeasors caused the same harm") (citation omitted); AmeriGas Propane, L.P. v. Landstar Ranger, Inc., 184 Cal. App. 4th 981, 989, 109 Cal. Rptr. 3d 686, 692 (2010) ("The test for indemnity is thus whether the indemnitor and indemnitee jointly caused the plaintiff's injury."). "[M]ultiple courts have recognized indemnity claims not based on tort." Rubie's LLC v. First Am. Title Co., No. 118CV01052DADSKO, 2018 WL 6419674, at *4 (E.D. Cal. Dec. 6, 2018) (collecting cases).

To the extent that the Carmack Amendment does not preempt Benchmark's crossclaim for equitable indemnification, the Court finds that AM Trans is not entitled to summary judgment on Benchmark's equitable indemnification crossclaim. The doctrine of equitable indemnity applies only where the indemnitor and indemnitee are jointly liable to the plaintiff. BFGC Architects Planners, Inc., 119 Cal. App. 4th at 852. However, AM Trans is incorrect in arguing that AM Trans and Benchmark not joint tortfeasors simply because plaintiff asserts different claims against AM Trans (Carmack Amendment liability) and Benchmark (breach of contract). See compl. ¶ 3-4. See In re JTS Corp., 617 F.3d at 1117 (under California law, "[w]hether individuals are joint tortfeasors … depends upon whether they caused 'one indivisible injury' or 'the same wrong' … "the plaintiff need not allege the same tort against the tortfeasors, but must only claim that the tortfeasors caused the same harm") (citation omitted). Here, plaintiff's claims against AM Trans and Benchmark relate to the same legal injury to plaintiff, namely, plaintiff's duty to compensate its insured Lorex for the loss of Lorex's Goods. Plaintiff presents evidence that Benchmark is responsible for the loss of the Goods for hiring AM Trans, which arranged for the Goods to be transported by Speedy, which ultimately failed to deliver the Goods. The evidence also indicates that AM Trans

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

is jointly responsible[3] for Benchmark's liability to plaintiff because AM Trans breached the "no double brokering" provision of its contract with Benchmark that ultimately resulted in plaintiff's injury. In other words, there is evidence suggesting that both Benchmark and AM Trans jointly caused plaintiff's injury: Benchmark harmed plaintiff by hiring AM Trans, and AM Trans harmed plaintiff by hiring Speedy which failed to deliver the Goods. This evidence supports Benchmark's equitable indemnity claim against AM Trans and precludes summary judgment.

       Independently, Benchmark has provided competent evidence to support its claim of equitable indemnification under a theory of implied contractual indemnity. "[I]mplied contractual indemnity is predicated upon the indemnitor's breach of contract, 'the rationale ... being that [the] contract ... necessarily implied an obligation to do the work involved in a proper manner and to discharge foreseeable damages resulting from improper performance. <u>Valley Nat'l Bank v. Mundo Trucking</u>, No. CV 21-6079 PA (AFMX), 2021 WL 6882194, at *6 (C.D. Cal. Dec. 29, 2021) (citation omitted); <u>see also</u> <u>Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.</u>, 148 Cal. App. 4th 937, 968 (2007) ("Implied contractual indemnity is a type of equitable indemnity predicated on the indemnitor's breach of contract with the indemnitee."). Here, Benchmark (the indemnitee) provides evidence of a contractual relationship with AM Trans in the form of numerous carrier confirmations, including one for the Goods at issue. <u>See</u> resp. to Benchmark ¶ 44-45; dkt. 61-6, Ex. B. Moreover, Benchmark provides evidence that under these carrier confirmation contracts—which lists "AM Trans Expedite INC" as a "Carrier"—AM Trans had an implied duty to transport the Goods at issue and was implicitly forbidden from subcontracting their transportation to a third party such as Speedy.[4] Dkt. 61-6, Ex. B. These carrier confirmations also constitute evidence that AM

---

[3] This responsibility would remain even if subsequent evidence established that AM Trans were a broker and foreclosed plaintiff's Carmack Amendment claim against AM Trans. See <u>City of Lincoln v. Cnty. of Placer</u>, No. 2:18-CV-00087-KJM-AC, 2022 WL 4280158, at *2 (E.D. Cal. Sept. 15, 2022) ("The right to equitable indemnity arises from the principle that an individual who has paid damages which ought to have been paid by another wrongdoer may recover from that wrongdoer.") (citation omitted).

[4] While the terms of the carrier confirmation contracts list "AM Trans Expedite INC"—not AM Trans—as the "Carrier," Benchmark provides evidence that the carrier confirmation contracts imposed these duties on AM Trans because there is evidence that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

Trans impliedly agreed to indemnify Benchmark for damages to Benchmark resulting from AM Trans' negligent performance of its responsibilities to deliver the Goods. See Mobil Oil Corp., 117 F.R.D. at 666. Because AM Trans subcontracted the transportation of the Goods to Speedy, a reasonably jury could conclude that AM Trans breached implied terms of the carrier confirmation contracts and is thus liable to Benchmark under a theory of implied contractual indemnity.

The Court is not persuaded by AM Trans' argument that Benchmark's contractual indemnity theory is prejudicial and untimely because "Benchmark's cross-claim does not allege implied contractual indemnity [and] … asserts only equitable indemnity and contribution." Reply to Benchmark at 5-6. Implied contractual indemnity is a type of equitable indemnity. See, e.g., Pugh v. Doctors Med. Ctr., 2009 WL 2058366 (N.D. Cal. July 15, 2009) (explaining that "implied contractual indemnity is a form of equitable indemnity").

Accordingly, AM Trans is not entitled to summary judgment on Benchmark's equitable indemnity claim against it.

    **C.**    **Benchmark's Contribution Claim against AM Trans**

AM Trans argues that Benchmark's contribution claim against AM Trans fails because "[t]he right of contribution … does not come into existence until the issuance of a judgment." Id. at 14 (citing cases). Here, because "no judgment has been entered against any party in this case, [Benchmark's contribution] claim [is] premature." Id. AM Trans further argues that "a [viable] contribution claim requires Benchmark and AM Trans to be joint tortfeasors" but that Allianz has not asserted a tort claim against either AM Trans or Benchmark. Id.

---

the two AM Trans entities are effectively the same business. See dkts 61-2 and 61-3 (providing evidence of AM Trans Expedite Inc.'s conversion to AM Trans Expedite LLC (i.e., AM Trans); dkt. 61-4, Roberge Decl. ¶ 14 (evidence that the two AM Trans entities accepted payment from Benchmark to the same bank account); see In re W. Coast Food Sales, Inc., 637 F.2d 707, 709 (9th Cir. 1981) ("[A] debtor [may not] evade the obligations of a validly executed security agreement by the simple expedient of an alteration in its business structure.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:24-cv-08682-CAS-MARx | Date | December 15, 2025 |
|---|---|---|---|
| Title | Allianz Global Risks US Insurance Company v. Benchmark Trade Solutions, Inc. et al. | | |

Benchmark does not appear to oppose AM Trans' argument on this issue. See generally opp. by Benchmark.

It appears that by reason of complete preemption, the Carmack Amendment may preclude Benchmark from pursuing its contribution claim. See Real Int'l SCM, 2025 WL 3050222, at *5 (C.D. Cal. July 24, 2025).

Here, to the extent that the Carmack Amendment does not preempt Benchmark's claim for contribution, because no judgment has been entered against Benchmark, any contribution claim is premature. Thus, Benchmark fails to state a contribution claim, which may exist only after "a money judgment rendered jointly against two or more defendants." See General Electric Co. v. State of Cal. ex rel. Dept. Pub. Wks., 32 Cal. App. 3d 918, 925 (1973).

Accordingly, based on the record now before the Court, AM Trans is entitled to summary judgment on Benchmark's contribution crossclaim.[5]

### V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES** AM Trans' motion for summary judgment with respect to Allianz's Carmack Amendment Claim against AM Trans.

The Court **DENIES** AM Trans' motion for summary judgment with respect to Benchmark's equitable indemnification claim against AM Trans.

The Court **GRANTS** AM Trans' motion for summary judgment with respect to Benchmark's contribution claim against AM Trans.

IT IS SO ORDERED.

|  | 00 | : | 29 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[5] This order is not intended to prevent Benchmark from seeking contribution in the event that a judgment is entered against it.